# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS BRUNTS, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 4:22-cv-00648-HEA |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| HORNELL BREWING CO., INC. and DOES 1 through 10, | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    SUMMARY OF ARGUMENT ............................................................................1

II.   PROCEDURAL HISTORY...................................................................................2

III.  ARGUMENTS AND AUTHORITIES.................................................................3

      A.    Plaintiff Fails to State a Claim Upon Which Relief Can
           Be Granted .......................................................................................................3

           1.    Federal Law Expressly Preempts Claims That Natural
                Flavors and Colors are Artificial...............................................4

                a.    The "Natural Flavor" Labels Comply With
                        21 C.F.R. § 101.22(a)(3) ..................................................5

                b.    Claims About Artificial Colors are Expressly
                        Preempted .........................................................................7

           2.    Plaintiff Fails to Plead Sufficient Facts to Support the
                Conclusory Allegation that a Reasonable Consumer is
                Likely to be Deceived ..................................................................8

                a.    The Question Whether Defendant's Labels are
                      Deceptive Can Be Decided by Way of a Motion
                      To Dismiss ........................................................................8

                b.    Plaintiff Does Not Identify the Products Containing
                      Malic Acid .........................................................................9

                  c.    The FAC Lacks Sufficient Allegations to Support the
                      Claim That the Reasonable Consumer is Deceived ........................9

             3.    Plaintiff Fails to State a Claim About Products Other Than
                Mucho Mango ...........................................................................12

             4.    Plaintiff Lacks Article III Standing to See Injunctive Relief....................13

             5.    The Express Warranty Claim Fails Due to Lack of Plausible
                  Allegations Regarding the Label as a Material Factor for
                  Purchase and Deficient Pre-Suit Notice.......................................13

6.     Plaintiff Fails to Plead Fraud with Required Particularity.........................14

CONCLUSION.....................................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   *556 U.S. 662 (2009)* ..................................................................................................4, 9

*Ballard v. Nat'l Football League Players Ass'n*,
   *123 F. Supp. 3d 1161 (E.D. Mo. 2015)* ...................................................................4

*Bell Atl. Corp. v. Twombly*,
   *550 U.S. 544 (2007)* ................................................................................................9

*Blake v. Career Educ. Corp.*,
   *2009 WL 140742 (E.D. Mo. Jan. 20, 2009)* ...........................................................15

*Dotson v. Arizona Beverages USA LLC*,
   *(C.D. Cal. June 24, 2022)* .......................................................................................11

*Dougherty v. Source Nats., Inc.*,
   *148 F. Supp. 3d 831 (E.D. Mo. 2015)* .....................................................................5

*Gillan v. Wright Med. Tech. Inc.*,
   *396 F. Supp. 3d 844 (E.D. Mo. 2019)* .....................................................................14

*Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*,
   *361 F. Supp. 3d 917 (E.D. Mo. 2019)* .....................................................................4

*Iglesias v. Hornell Brewing Co., Inc.*,
   Case No. 3:22-CV-01795.................................................................................. 2-3, 14

*Ivie v. Kraft Foods Global, Inc.*,
   *2013 WL 685372 (Feb. 25, 2013 N.D. Cal. 2013)* ..................................................6

*Johnson v. Atkins Nutritionals, Inc.*,
   *2017 WL 6420199 (W.D. Mo. Mar. 29, 2017)* .........................................................5

*Khaliki v. Helzberg Diamond Shops, Inc.*,
   *2011 WL 1326660 (W.D. Mo. Apr. 6, 2011)* ...........................................................15

*Lam v. General Mills*,
   *859 F. Supp.2d 1097 (N.D. Cal. 2012)* ................................................................6, 11

*Lujan v. Defs. of Wildlife*,
   *504 U.S. 555 (1992)* ................................................................................................13

ii

*Martin v. Wm. Wrigley Jr. Co.*,
    2017 WL 4797530 (W.D. Mo. Oct. 24, 2017) ..........................................................................8

*Meagley v. City of Little Rock*,
    639 F.3d 384 (8th Cir. 2011) ...................................................................................................13

*Miller v. Nestle Purina PetCare Co.*,
    2014 WL 307271 (E.D. Mo. Jan. 28, 2014) ...........................................................................9

*Missourians for Fiscal Accountability v. Klahr*,
    830 F.3d 789 (8th Cir. 2016) ..................................................................................................13

*Morris v. Walmart Inc.*,
    2020 WL 470287 (N.D. Ala. Jan. 29, 2020) ...........................................................................6

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
    406 F.3d 1052 (8th Cir. 2005) .................................................................................................4

*Nat'l Council for Improved Health v. Shalala*,
    122 F.3d 878 (10th Cir. 1997) .................................................................................................5

*Parker v. Wal-Mart Stores, Inc.*,
    367 F. Supp. 3d 979 (E.D. Mo. 2019) .....................................................................................5

*Rawa v. Monsanto Co.*,
    2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) .........................................................................12

*Robie v. Trader Joe's Co.*,
    2021 WL 2548960 (N.D. Cal. June 14, 2021) .........................................................................6

*Sarasota Wine Mkt., LLC v. Parson*,
    381 F. Supp. 3d 1094 (E.D. Mo. 2019) .................................................................................13

*Schulte v. Conopco, Inc.*,
    997 F.3d 823 (8th Cir. 2021) ................................................................................................ 8-9

*Silva v. Smuckers Natural Foods, Inc.*,
    2015 WL 5360022 (E.D. N.Y. Sept. 14, 2015) ................................................................... 7-8

*Smith v. Atkins Nutritionals, Inc.*,
    2018 WL 9868591 (W.D. Mo. May 8, 2018) ........................................................................13

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) .................................................................................................14

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................................................. 6-7

*Webb v. Dr. Pepper Snapple Grp., Inc.,*
  *2018 WL 1955422 (W.D. Mo. Apr. 25, 2018)* ...........................................................8

*Whittaker v. CRST Malone, Inc.,*
  *2019 WL 931966 (E.D. Mo. Feb. 26, 2019)* ...........................................................3

**Federal Statutes**

21 U.S.C. § 343-1(a)(2) ...........................................................5

21 U.S.C. § 343-1(a)(3) ...........................................................5, 8

21 U.S.C. § 343(i), (k) ...........................................................5

Federal Food, Drug, and Cosmetic Act ........................................................... 1, 4-5

**State Statutes**

Missouri Merchandising Practices Act ........................................................... 8-9, 15

**Rules**

Fed. R. Civ. P. 9(b) ........................................................... 2, 14-15

Federal Rule of Civil Procedure 12(b)(1) ...........................................................1, 13

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 3, 4

**Regulations**

21 C.F.R. § 73.30 ...........................................................7

21 C.F.R. § 73.95 ...........................................................7

21 C.F.R. § 73.250 ...........................................................7

21 C.F.R. § 73.260 ...........................................................7

21 C.F.R. § 101.22 ...........................................................11

21 C.F.R. § 101.22(a)(3) ........................................................... 5-7

21 C.F.R. § 101.22(c) ...........................................................8

21 C.F.R. § 101.22(k) ...........................................................11

21 C.F.R. § 101.22(k)(2) ...........................................................8, 11

21 C.F.R. §§ 172.515 ...........................................................6

*Food Labeling: Nutrient Content Claims, General Principles, Petitions,*
  *Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty*
  *Acid, and Cholesterol Content of Food*, 58 Fed. Reg. 2302-01, 1993 WL
  1540, at *2407 (Jan. 6, 1993)................................................................................................10

## I.     SUMMARY OF ARGUMENT

Defendant, Hornell Brewing Co., Inc. (at times "Hornell" or "Defendant"), submits the within memorandum of law in support of its motion to dismiss the First Amended Complaint ("FAC") filed by plaintiff, Nicholas Brunts (at times "Plaintiff" or "Mr. Brunts"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  As is set forth more fully below, just grounds exist to dismiss the FAC because:

- The false labeling claims are predicated on a finding that natural flavors and colors in the products are artificial.  However, those claims are not based what constitutes artificial flavors or colors under the Federal Food, Drug, and Cosmetic Act ("FDCA") but, instead, are premised upon assertions as to how the natural flavors and colors are allegedly processed or synthesized. The express preemption provisions of the FDCA bar such claims.

- Plaintiff must allege facts to state how and why the general consuming public, acting reasonably in the circumstances, could be misled.  The FAC lacks sufficient factual allegations to support the conclusory allegation that Hornell's "All Natural" labels deceive the reasonable consumer even if the ingredients derive from natural sources.

- Plaintiff only identifies, by name, the Mucho Mango, as being purchased.  He nevertheless sues about other products, including those with different ingredients and/or labeled as diet.  Plaintiff cannot claim injury, nor plausibly allege deception, about products he does not allege, by name, to have bought.

- The FAC contains no allegations of any real or immediate threat of injury, or the likelihood of future or continuing harm, and Plaintiff thereby lacks Article III standing to sue for injunctive relief.

1

- The breach of express warranty claim fails as: (1) the "All Natural" label cannot plausibly be a material factor for the purchase of the Mucho Mango given that this suit repeats, *verbatim*, many of the same core allegations about artificial ingredients, previously filed by a different person in a separate action, and initiated before Mr. Brunts' purchase on April 3, 2022; and (2) Plaintiff cannot plausibly allege furnishing Hornell with pre-suit notice because Plaintiff asserts that notice was furnished on April 4, 2022, only 4 days prior to filing suit, and the fact that Hornell actually received the letter on April 8, 2022, the day this action was filed.[1]

- Contrary to Fed. R. Civ. P. 9(b), other than the Mucho Mango, the fraud claims fail to particularize the "what," "where," "when," and "how" of any other products that are the subject of the action and is devoid of any particularities regarding the advertising claimed to be deceptive.

## II.   <u>PROCEDURAL HISTORY</u>

Plaintiff filed a complaint on April 8, 2022 in the St. Louis County Circuit Court for the State of Missouri. (ECF No. 1, Ex. A., Complaint). Pending, at that time, in Federal Court in the Northern District of California, in the case *Iglesias v. Hornell Brewing Co., Inc.,* Case No. 3:22-CV-01795 ("Iglesias Action"), the plaintiff there (represented by different counsel) had sued Hornell making the same core allegations repeated here by Mr. Brunts. (Compare Defendant's Request for Judicial Notice, "RJN," Ex. D, ¶¶ 1, 7, 17, 19, 21-29, 30 with Complaint, ¶¶ 1, 9, 10, 20, 21, 30, 32, 34-42 and 44). That action was filed on March 21, 2022, before Plaintiff's suit. (*Id.*). Many of the allegations are conspicuously identical. Plaintiff claims he purchased the Mucho Mango on April 3, 2022. (FAC, ¶ 95).

---

[1] The FAC marks the second time Plaintiff repeats *verbatim* many of the same allegations in that other prior pending action.

09/30/2022 SL1 1807074v1 115260.00010

On July 18, 2022, Defendant filed a motion to dismiss.  (ECF No. 17).  On August 31, 2022, Plaintiff filed the FAC (ECF No. 22), rendering moot a prior motion to remand and the initial motion to dismiss.  The complaint in the Iglesias Action had been previously amended on June 22, 2022.  (RJN, Ex. E).  The FAC here repeats *again, verbatim,* many of the allegations made in the amended complaint in the Iglesias Action.  (Compare RJN, Ex. E, ¶¶ 1, 25, 21a.-k, 22-24, 27-32, 35-45,46-50, 63, 64, 70, 71, with FAC ¶¶1, 25, 35a.-k, 36, 38-45, 49-61, 63-65, 68, 70, 71, 76 and 77).  By way of glaring example, Plaintiff repeats, *verbatim*, the same exact public comments (out of 7,687 alleged to have been made), in the same order, enumerated in the same way, as stated in the Iglesias Action.

Plaintiff alleges that Hornell falsely labels the following products:  AriZona Kiwi Strawberry Fruit Juice Cocktail, Lemonade Fruit Juice Cocktail, Mucho Mango Fruit Juice Cocktail, Fruit Punch Fruit Juice Cocktail, Watermelon Fruit Juice Cocktail, Orangeade, Grapeade, Lemonade Drink Mix, Golden Bear Strawberry Lemonade, Iced Tea Lemonade, Diet Peach Iced Tea, and Rx Energy Herbal Tonic (collectively, the "Products").  (ECF No. 22, FAC ¶ 1, n. 1).  As in the Iglesias Action, Plaintiff asserts that the Products contain artificial flavors, artificial colors, ascorbic acid, high fructose corn syrup ("HFCS"), malic acid, and/or erythritol. (*Id.* ¶ 1).  Due to these ingredients, Plaintiff asserts the Products are falsely labeled as "All Natural" and/or "100% Natural."  (*Id.* ¶¶ 1, 4, 6).

### III.   ARGUMENTS AND AUTHORITIES

### A.   Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal for failure to state a claim is appropriate if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Whittaker v. CRST Malone, Inc.*, No. 4:18-CV-1048 HEA, 2019 WL 931966, at *1 (E.D. Mo. Feb. 26, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)).

3

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   In reviewing a Rule 12(b)(6) motion, a court "accepts as true all of the factual allegations contained in the complaint, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief." *Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 361 F. Supp. 3d 917, 919 (E.D. Mo. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); Fed. R. Civ. P. 8(a)(2)).   However, a court need not accept legal conclusions as true.  *Iqbal,* 556 U.S. at 678.

Notably, the FAC includes photographs of *portions* of 10 the labels of the 12 Products but does not include the entire contents of those labels.  (FAC, ¶ 21).  Plaintiff alleges providing written notice of breach of express warranty but does not attach any writing.  (FAC, ¶ 118).  A court may consider the entire labels of all Products when deciding the motion to dismiss.  *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (considering press release on motion to dismiss where plaintiff alleged the press release was false and misleading but failed to attach it to the complaint); *Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1165 (E.D. Mo. 2015) ("Where the extraneous documents are central to the plaintiff's case, such as the written contract in a contract dispute, the court may examine the documents in deciding a motion to dismiss.").  Submitted with this motion is the declaration of Don Vultaggio, Hornell's Chairman, ("Vultaggio Dec."), attaching entire labels of the Products and the declaration of Maureen Edgar ("Edgar Dec.") attaching the letter referenced in the FAC.

### 1. <u>Federal Law Expressly Preempts Claims That Natural Flavors and Colors are Artificial</u>

In 1990, Congress amended the FDCA by enacting the National Labeling and Education Act ("NLEA"), specifically to "clarify and to strengthen [the FDA's] authority to require nutrition

4

labeling on foods . . . ." *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337). The purpose of the NLEA is to "prevent states from adopting inconsistent requirements with respect to the labeling of nutrients." *Dougherty v. Source Nats., Inc.*, 148 F. Supp. 3d 831, 834 (E.D. Mo. 2015) (quotation omitted).

"[T]he Supremacy Clause preempts state-law labeling requirements unless they are identical to the NLEA." *Parker v. Wal-Mart Stores, Inc.*, 367 F. Supp. 3d 979, 984 (E.D. Mo. 2019). For a state law claim to survive preemption, it must be premised on conduct that both "(1) violates the FDCA and (2) would give rise to a recovery under state law even in the absence of the FDCA." *Dougherty*, 148 F. Supp. 3d at 834; *see also Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-04213-MDH, 2017 WL 6420199, at *4 (W.D. Mo. Mar. 29, 2017) ("[A] plaintiff may sue a defendant for conduct that violates federal law—such claims merely impose 'identical' requirements—or; (2) a plaintiff may sue a defendant for conduct that falls outside of the narrow scope of the preemption provision.").

21 U.S.C. § 343-1(a)(2) preempts "any requirement for the labeling of food of the type required by section . . . 343(i)(2) . . . of this title that is not identical to the requirement of such section." 21 U.S.C. § 343-1(a)(3) preempts "any requirement for the labeling of food of the type required by section . . . 343(i)(1), or 343(k) of this title that is not identical to the requirement of such section." Sub-sections 343(i) and (k) set forth requirements for the labeling of flavoring and coloring. 21 U.S.C. § 343(i), (k). Hornell is not asserting that Plaintiff's All Natural label claims are preempted but, rather, that claims that the natural flavors and colors are artificial are expressly preempted by the FDCA and by virtue of Plaintiff not claiming any violation of federal law.

a.   **The "Natural Flavor" Labels Comply With 21 C.F.R. § 101.22(a)(3)**

21 C.F.R. §101.22(a)(3) states as follows:

5

> The term natural flavor or natural flavoring means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20, 182.40, and 182.50 and part 184 of this chapter, and the substances listed in § 172.510 of this chapter.

21 C.F.R. §101.22(a)(3) regulation allows a product to be labeled "naturally flavored" even it does not contain natural ingredients. *See Lam v. General Mills*, 859 F. Supp.2d 1097, 1102-03 (N.D. Cal. 2012). As long as the product contains a natural flavor derived from the characterizing food ingredient, the label will not violate 21 C.F.R. §101.22(a)(3). *Id.* Claims that seek to impose a different standard are preempted. *Id.*; *see also Morris v. Walmart Inc.*, No. 2:19-CV-650-GMB, 2020 WL 470287, at *3 (N.D. Ala. Jan. 29, 2020) (dismissing as preempted claim that "naturally flavored" was misleading because the product contained "unnatural and synthetic ingredients"); *Ivie v. Kraft Foods Global, Inc.,* C-12-02554-RMW, 2013 WL 685372, at *9 (Feb. 25, 2013 N.D. Cal. 2013)(dismissing, on preemption grounds, with leave to amend, because there was no dispute that the lemon flavor in the product qualified as a natural flavor under the regulations); *Robie v. Trader Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *4 (N.D. Cal. June 14, 2021)(ruling that "[t]o the extent Plaintiff's argument that the Product's labeling is deceptive because the flavors, and not the ingredients, are unnatural, those claims are preempted."); and *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889–90 (C.D. Cal. 2013) (dismissing on preemption grounds claim related to "all natural flavors" where label complied with 21 C.F.R. § 101.22(a)(3)).

Plaintiff does not claim a violation of 21 C.F.R. §101.22(a)(3) and/or that any of the flavors are artificial under 21 C.F.R. §§ 172.515 or 182.60. Instead, he alleges that the natural flavors are

6

artificial (FAC, ¶ 64) and cites to statements in a book by a Mathew Attokaran, not FDA regulations.  (*Id.,* ¶ 66, fn. 31-33).  It is significant that Plaintiff does not allege any of the flavors in the Products appear on the FDA's list of artificial flavors.  *See Viggiano,* F. Supp.2d at 889 (stating sucralose and ace-k were not flavors under the FDA and that the allegation that they were artificial did not render the label "all natural flavors" false).

The FDCA's comprehensive scheme governing the labeling of flavors allows Defendant to use natural flavors to describe the Products' flavor profiles as long as the labels comply with 21 C.F.R. §101.22(a)(3).  Because Plaintiff's claims seek to impose a standard of what constitutes an artificial flavor that differs from FDA regulations, such claims are expressly preempted.

**b.**   **Claims About Artificial Colors are Expressly Preempted**

Plaintiff claims that the annatto, beta carotene, fruit and vegetable juice, and vegetable juice in the Products are "artificial and/or synthetic."  (FAC, ¶ 42).  The FDA defines these in products as allowable color additives derived from natural sources.  *See* 21 C.F.R. § 73.30(a)(1) ("The color additive annatto extract is an extract prepared from annatto seed"); 21 C.F.R. § 73.95(a)(1) ("The color additive beta-carotene is prepared synthetically or obtained from natural sources"); 21 C.F.R. § 73.250(a)(1) ("The color additive fruit juice is prepared either by expressing the juice from mature varieties of fresh, edible fruits, or by the water infusion of the dried fruit"); and 21 C.F.R. § 73.260(a)(1) ("The color additive vegetable juice is prepared either by expressing the juice from mature varieties of fresh, edible vegetables, or by the water infusion of the dried vegetable").  Because these ingredients are not subject to certification under FDA regulations (21 C.F.R. §§ 73.30(e), 73.95(e), 73.250(d), and 73.260(d)), by stating their presence in the ingredient list, the labels comply with FDA regulations.  *See Silva v. Smuckers Natural Foods, Inc.,* No. 14-cv-6154, 2015 WL 5360022, at *6 (E.D. N.Y. Sept. 14, 2015) (ruling that because caramel color was not subject to certification, disclosing its presence as an ingredient complied with federal law).

7

Plaintiff does not allege that the colors are artificial based upon any FDA regulatory standard, including the regulation setting forth when a color additive must be labeled as artificial. *See* 21 C.F.R. § 101.22(k)(2). Nevertheless, he seeks a finding from this Court that the colors are artificial. If successful, the labels would have to declare the presence of artificial colors. 21 C.F.R. § 101.22(c). By applying his own definition of artificial color, instead of the requirements under the FDA, Plaintiff's claims about artificial colors are expressly preempted by 21 U.S.C. § 343-1(a)(3). *See Silva,* 2015 WL 5360022, at *6.

2. **Plaintiff Fails to Plead Sufficient Facts to Support the Conclusory Allegation that a Reasonable Consumer is Likely to be Deceived**

    a. **The Question Whether Defendant's Labels are Deceptive Can Be Decided by Way of a Motion to Dismiss**

To state a valid claim under the Missouri Merchandising Practices Act ("MMPA"), Plaintiff must establish he "acted as a reasonable consumer would in light of all circumstances." *See, e.g.*, *Webb v. Dr. Pepper Snapple Grp., Inc.*, No. 4:17-CV-624-RK, 2018 WL 1955422, at *3 (W.D. Mo. Apr. 25, 2018) ("Whether the conduct alleged is deceptive under the MMPA is to be analyzed under the 'reasonable consumer' standard.") (citation omitted). While the question whether packaging is misleading to the reasonable consumer is often a question of fact, not appropriate for determination on a motion to dismiss, nevertheless, that issue can at times be adjudicated "where the plaintiff fails to show the likelihood that a reasonable consumer would be deceived." *Martin v. Wm. Wrigley Jr. Co.*, No. 4:17-CV-00541-NKL, 2017 WL 4797530, at *5 (W.D. Mo. Oct. 24, 2017) (citing *In re Gen. Mills Glyphosate Litig.*, No. 16-CV-2869, 2017 2983877, at *6 (D. Minn. July 12, 2017)); *see also Schulte v. Conopco, Inc.*, 997 F.3d 823, 826 (8th Cir. 2021) (applying plausibility pleading standard when dismissing MMPA claim). The express terms of the statute make clear that a "court may dismiss a claim as a matter of law where the claim fails to show a

8

likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer." Mo. St. 407.025.1.

As observed in *Schulte*, the plausibility pleading standard applies to MMPA claims. 997 F.3d at 826. There, the Eighth Circuit rejected the plaintiff's argument that dismissal was inappropriate at the motion to dismiss phase because the issue of whether a practice is unfair under the MMPA is a factual issue. *Id.* The Court found "[t]his does not override the plausibility pleading standard." In the absence of "evidence of a course of conduct . . . that would amount to fraud or deception, MMPA complaints can be dismissed." *Id.*; *see also Miller v. Nestle Purina PetCare Co.*, No. 4:13-CV-283 HEA, 2014 WL 307271, at *2 (E.D. Mo. Jan. 28, 2014) (dismissing MMPA claim for failure to meet pleading requirements in *Twombly* and *Iqbal*).

**b.      Plaintiff Does Not Identify the Products Containing Malic Acid**

Plaintiff fails to state a claim relating to Defendant's alleged deceptive use of the terms "All Natural" and "100% Natural" used to describe products containing malic acid. In the FAC, Plaintiff alleges malic acid "is generally obtained through chemical synthesis" and, "[u]pon information and belief, the malic acid present in the Products is chemically synthesized and artificial." (FAC, ¶¶ 55, 56) (emphasis added). However, he fails to allege what Products contain malic acid. None of the labels of the Products state that malic acid is an ingredient. (Vultaggio Dec., Exs. 1-12).

**c.      The FAC Lacks Sufficient Allegations to Support the Claim that the Reasonable Consumer is Deceived**

Plaintiff does not plead sufficient facts as to how and/or why the presence of natural flavors, natural colors, HFCS, ascorbic acid, and/or erythritol would likely deceive a reasonable consumer. Instead, he offers wholly conclusory allegations in support of his claims, including: (1) the added coloring agents in the Products render the "All Natural" label claims false (FAC, ¶ 33); (2) natural

9

flavors often have constituent components which are "artificial or synthetic" and may not qualify as "natural" ingredients (*Id.,* ¶ 64); (3) "[u]pon information and belief, the ascorbic acid used by Defendant in the Products is not a naturally occurring ascorbic acid, but instead a synthesized chemical process" (*Id.,* ¶ 50); (4) HFCS is not considered a natural ingredient because it undergoes fundamental chemical changes in the manufacturing process (*Id.,* ¶ 53); (5) the erythritol present in the Products is an artificial and synthetic ingredient (*Id.,* ¶ 59); and (6) reasonable consumers would not expect added coloring agents, regardless of their sources, natural flavors, ascorbic acid, HFCS, and erythritol to be present in foods and beverages labeled as "All Natural" and "100% Natural" (*Id.,* ¶¶ 39, 48, 51, 54, 61, 67).

These allegations fail to include facts about what flavors are not natural or why a reasonable consumer would not expect natural flavors, natural colors, HFCS, ascorbic acid, and/or erythritol to be in a natural product. Plaintiff also fails to assert facts why a reasonable consumer would understand "All Natural" to mean the utter absence of added colors, natural flavors, sweeteners, and/or synthetic substances regardless of source. Such an assertion is contrary to the FDA Natural Policy. The FDA Natural Policy states, *inter alia,* as follows:

> …The agency will maintain its current policy (as discussed in the general principles proposal (56 FR 60421 at 60466) **not to restrict the use of the term "natural" except for added color, synthetic substances, and flavors as provided in section 101.22. Additionally, the agency will maintain its policy regarding the use of "natural", as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.** Further, at this time the agency will continue to distinguish between natural and artificial flavors as outlined in section 101.22.

[*Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58 Fed. Reg. 2302-01, 1993 WL 1540, at \*2407 (Jan. 6, 1993); emphasis added].

09/30/2022 SL1 1807074v1 115260.00010

The FDA Natural Policy does not prohibit the presence of added colors or synthetic ingredients in natural products but instead refers to 21 C.F.R. §101.22 and allows for the presence of color additives, as well artificial and/or synthetic ingredients in a natural product, as long as the ingredient that has been added to a food would normally be expected in the food. *See id.*; s*ee also Dotson v. Arizona Beverages USA LLC*, Civ. A. No. 2:22-cv-00923 (SVW-MAA) (C.D. Cal. June 24, 2022) (RJN, Ex. A) (noting that an FDA definition of natural under the FDA Natural Policy "allows manufacturers to include synthetic ingredients 'normally expected' to be in the product").

21 C.F.R. § 101.22(k) addresses "[t]he label of a food to which **any coloring** has been added" and provides, with respect to color additives subject to 21 C.F.R. § 101.22(k)(2), that those ingredients may be declared by the terms "color added" "or by an equally informative term that makes clear that a color additive has been used in the food." (Emphasis added). The labels here clearly identify annatto, beta carotene, fruit and vegetable juice, and vegetable juice by their names and as being used for color. (Vultaggio Dec., Exs. 1-12).

Plaintiff's claim about being deceived about the natural flavor label, even if the flavor is natural (FAC ¶ 67), defies common sense and is equally conclusory. By invoking *Lam v. General Mills,* which states that "a product with no natural ingredients can still qualify as naturally flavored" (*Id.,* ¶ 64), he concedes that the label complies with FDA regulations and is not actionable.

In asserting that HFCS is synthetic, Plaintiff cites to a 2008 article to claim that the FDA does not consider HFCS to be natural. (*Id.,* ¶ 53 fn. 26; RJN, Ex. B). That is a skewed statement of the public record. The FDA has *promulgated no law* stating that HFCS is not natural. The public record shows that, on July 3, 2008, after the article referenced in the First Amended Complaint, the FDA wrote to the Corn Refiners Association stating it would not object to the use

11

of the term natural on a product containing HFCS dependent upon how the HFCS is processed. (RJN, Ex. C).   However, Plaintiff fails to state a claim about HFCS because he has not stated whether the HFCS in any of the Products is artificial and has not even mentioned the July 2008 FDA Letter in the FAC.

Plaintiffs' allegations that: (1) the ingredients in the Products render the "All Natural" label claims false (FAC, ¶ 1), and (2) Defendant's conduct is deceptive to the reasonable consumer (*Id.,* ¶¶ 39, 48, 51, 54, 61, 67) are conclusory and not required to be accepted as being true.   The claim that "All Natural" is deceptive requires more facts explaining how Plaintiff's interpretation of "All Natural" (i.e., meaning no alleged added colors, natural flavors, sweeteners, synthetic substances and/or preservatives, regardless of natural source) is shared by the reasonable consumer.   Plaintiff cites to surveys, articles and isolated public comments but does not allege how they support how a reasonable customer would be deceived by:  a product labeled "All Natural" that contains added coloring, and/or natural flavors, from natural sources; where such coloring and/or natural flavors are approved by the FDA; and are truthfully disclosed on the label in conformance with FDA standards.   Dismissal is warranted because Plaintiff fails to plead enough facts to state a claim that a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendant's "All Natural" label.

### 3.   Plaintiff Fails to State a Claim About Products Other Than Mucho Mango

Plaintiff claims purchasing one product, the Mucho Mango Fruit Juice Cocktail.  (FAC, ¶ 95).  Significantly, the statement of ingredients on the Mucho Mango does not include erythritol, malic acid and/or any of the added coloring, other than beta carotene.  (Vultaggio Dec., Ex. 3). Because Plaintiff's claims are premised upon product composition, he has no standing to claim injury concerning any other product other than the Mucho Mango.  *See Rawa v. Monsanto Co.,* No. 4:17-CV-01252 AFG, 2017 WL 3392090, at *5 (E.D. Mo. Aug. 7, 2017) ("This Court believes

12

that the Missouri Supreme Court would hold that Plaintiff may not bring a claim under the MMPA for products he did not purchase."); *Smith v. Atkins Nutritionals, Inc.*, No. 2:18-CV-04004-MDH, 2018 WL 9868591, at *7 (W.D. Mo. May 8, 2018) ("Plaintiff's standing to represent a class of purchasers is limited to those products she purchased.").

### 4.   **Plaintiff Lacks Article III Standing to Seek Injunctive Relief**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging a plaintiff's Article III standing goes to a federal court's subject-matter jurisdiction. *See Sarasota Wine Mkt., LLC v. Parson*, 381 F. Supp. 3d 1094, 1099 (E.D. Mo. 2019) ("[M]otions to dismiss for lack of standing fall under the purview of Rule 12(b)(1)"). To obtain injunctive relief, a plaintiff must show the likelihood of suffering a future injury. *See Meagley v. City of Little Rock,* 639 F.3d 384, 391 (8th Cir. 2011). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (quotation omitted). The injury must be "concrete and particularized." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The threat of injury "must be actual and imminent, not conjectural or hypothetical." *Id.*

Plaintiff seeks a judgment for, *inter alia*, injunctive relief. (FAC, Prayer For Relief, p. 30). However, he does not allege that he will purchase the Products again. Because Plaintiff has not alleged any real or immediate threat of injury, or the likelihood of future or continuing harm, he lacks Article III standing to seek for injunctive relief.

### 5.   **The Express Warranty Claim Fails Due to Lack of Plausible Allegations Regarding the Label as a Material Factor for Purchase and Deficient Pre-Suit Notice**

"[T]he elements of a breach of express warranty claim are: (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact regarding the kind or quality of those goods;

13

(3) the statement was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to the statement of fact; (5) the nonconformity harmed the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion." *Gillan v. Wright Med. Tech. Inc.,* 396 F. Supp. 3d 844, 848–49 (E.D. Mo. 2019) (citing *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 122 (Mo. Banc 2010) and Mo. Rev. Stat. § 400.2 – 313.1(a)). Also, "[t]he buyer of the product must give some type of a pre-suit notice to the seller in order to state an express breach of warranty claim." *Gillan*, 396 F. Supp. 3d at 848 (citing *Budach v. NIBCO, Inc.,* No. 2:14-CV-04324-NKL, 2015 WL 6870145, at *4 (W.D. Mo. Nov. 6, 2015)).

Plaintiff alleges that the purchase was made based upon "promises and representations" about the label that were the "basis of the bargain." (FAC, ¶¶ 110 and 111). However, Plaintiff cannot plausibly allege the label was a material factor for the April 3, 2022 purchase given: (1) the purchase occurred after the Iglesias Action was filed; and (2) his apparent awareness of that lawsuit by virtue of parroting many of the same allegations made in the Iglesias Action, claiming the same ingredients, in many of the same products, bearing the same labels, are artificial. He also alleges having furnished pre-suit notice of breach of warranty on April 4, 2022. (FAC, ¶ 118). However, Hornell received this letter on April 8, 2022, rendering alleged pre-suit notice illusory. (Edgar Dec., ¶ 3, Ex. A). Not only is the letter untimely, that document only refers to alleged artificial colors, not any other ingredient claimed to be artificial. (*Id.*) Because of these deficiencies, Plaintiff has failed to state a claim for breach of warranty.

### 6. <u>Plaintiff Fails to Plead Fraud with Required Particularity</u>

To satisfy the particularity requirement of Rule 9(b), a complaint "must plead facts such as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

14

Rule 9(b)'s heightened pleading requirements apply to state consumer fraud statutes like the MMPA. *See Blake v. Career Educ. Corp.*, No. 4:08-CV-00821 ERW, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) ("The United States District Courts in Missouri have consistently applied Rule 9(b) to cases arising under the MMPA.").

Aside from the April 3, 2022 purchase of the Mucho Mango, Plaintiff fails to particularize his alleged purchase of any other Products. He "recalls purchasing and ingesting a wide variety of the Products listed herein, including, from time to time, the diet versions of the Products." (FAC, ¶ 96). He does not identify these other Products, allegedly bought, by name, where they were purchased, and/or when. In the absence of these allegations, Plaintiff has failed to comply with pleading requirements of Rule 9(b) about Products, other than Mucho Mango, and those claims should be dismissed. *See Khaliki v. Helzberg Diamond Shops, Inc.*, No. 4:11-CV-00010-NKL, 2011 WL 1326660, at *4 (W.D. Mo. Apr. 6, 2011) (dismissing MMPA claim for failure to comply with Rule 9(b) where plaintiff failed to allege "specific details of the defendant's fraudulent acts, including when and where the acts occurred and who engaged in them"). The FAC also refers to advertising generally but does not set forth what the advertising stated, when it was viewed and what advertising pertained to any product. (FAC, ¶¶ 1, 18, 133). Due to the lack of specificity about advertising, the fraud claims, based on representations other than those on the Mucho Mango label, fail under Fed. R. Civ. P. 9(b).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Hornell respectfully requests that the Court grant the motion to dismiss the FAC without leave to amend.

Respectfully submitted,

Dated:  September 30, 2022                 <u>/s/ Robert P. Donovan, Esq.</u>
                                          Robert P. Donovan, Esq.

15

ROBERT P. DONOVAN, Esq.
(*Admitted Pro Hac Vice*)
STEVENS & LEE
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone No.:  (201) 857-6778
Facsimile No.: (610) 371-7938
robert.donovan@stevenslee.com

JOEL R. SAMUELS, Esq.
HARNESS, DICKEY & PIERCE, P.L.C.
7700 Bonhomme, Suite 400
St. Louis, Missouri 63105
Telephone No.:  (314) 726-7500
jsamuels@harnesslp.com

Attorneys for Defendant,
Hornell Brewing Co., Inc.

16