## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

NICHOLAS BRUNTS,          )
*individually and on behalf of*  )
*all others similarly situated*,  )
                          )
      **Plaintiff**,        )
                          )
      **v.**              )     **Case No. 4:22CV648 HEA**
                          )
HORNELL BREWING CO., INC.,  )
et al.,                     )
                          )
      **Defendants.**    )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Hornell Brewing Co., Inc.'s Motion to Dismiss the First Amended Complaint [Doc. No. 25]. Plaintiff Nicholas Brunts opposes the motion.  For the reasons set forth below, the Defendant's Motion will be granted in part and denied in part. Plaintiff will be granted leave to file a Second Amended Complaint.[1]

### Facts and Background

On April 8, 2022, Plaintiff Nicholas Brunts filed this putative class action proceeding against Defendants in the Circuit Court of St. Louis County, Missouri, alleging breach of warranty, breach of implied contract, unjust enrichment, and

---

[1] Leave to amend should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2).

violations of the Missouri Merchandising Practices Act. Plaintiff asserts that Defendants sold a variety of AriZona beverages, falsely representing that the products were "All Natural" or "100% Natural" when the beverages contained added coloring and unnatural ingredients.

Defendant Hornell Brewing timely removed the matter to federal court, invoking this Court's diversity jurisdiction under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Plaintiff filed a motion to remand this case back to the Circuit Court of St. Louis County, Missouri, which was denied.

On August 31, 2022, Plaintiff filed an Amended Complaint [Doc. No. 22] . Defendant filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), which Plaintiff opposes.

Plaintiff's Amended Complaint alleges, in pertinent part:[2]

Defendant falsely labels and advertises certain AriZona beverage products as being "All Natural," when, in reality, they contain multiple ingredients that are not natural. Hornell is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive

---

[2] For purposes of deciding the motion to dismiss for failure to state a claim, the Court accepts the factual allegations contained in the Amended Complaint as true. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008). The Court may also consider documents attached to, or materials that are necessarily embraced by, the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations and citations omitted). This recitation of facts, however, is set forth for the purposes of this motion only and in no way relieves the parties of the necessary proof thereof in later proceedings.

packaging of the Products. The purportedly "All Natural" AriZona beverages are collectively referred to as the "Products," which include the following AriZona beverages: Kiwi Strawberry Fruit Juice Cocktail; Lemonade Fruit Juice Cocktail; Mucho Mango Fruit Juice Cocktail; Fruit Punch Fruit Juice Cocktail; Orangeade; Grapeade; Lemonade Drink Mix; Golden Bear Strawberry Lemonade; Watermelon Fruit Juice Cocktail and Rx Energy Herbal Tonic.  The Products, regardless of flavor or color of packaging, uniformly claim to be "ALL NATURAL." The "ALL NATURAL" label is a key selling point for the Products.

Paragraphs 25-39

By representing the Products to be "All Natural," Defendant is capitalizing on consumers' preference for food items with no artificial additives. In reality, however, the Products cannot be labeled as "All Natural" because they contain multiple unnatural ingredients, including ascorbic acid, high fructose corn syrup, malic acid, erythritol, and added coloring (including but not limited to "beta carotene," "fruit and vegetable juices," "annatto," and "vegetable juice").

The average consumer spends less than 20 second making any individual in-store purchasing decision. That decision hinges almost entirely on the product's front labeling because the average consumer does not have the time – while presumably on a schedule and surrounded by multiple other consumers – to inspect

the small font on the rear of a Product to determine whether it tends to support

and/or refute a prominent claim, such as "All Natural," on the front of the Product.

Based on the "All Natural" and/or "100% Natural" claims on the front of the

Product, a reasonable consumer would believe that the Product contains only

"natural" ingredients. Likewise, consumers assume that a "natural" product will

not contain any preservatives. This is true despite what ingredients may be listed

on the back-side small-print of a product. Consumers' ability to interpret nutrition

label information on the back of products is relatively poor; thus, the prominent

labels typically featured on the front packaging are particularly important to a

consumer's purchasing decision.

Consequently, Defendants' practice of capitalizing on consumers'

preferences for healthier products by falsely labeling their Products "All Natural"

and/or "100% Natural" is deceptive and misleading. This deception continues

today, as consumers continue to purchase the Products under the mistaken belief

that they are all natural based on Defendant's false, deceptive, and misleading label

claims of "All Natural" and/or "100% Natural."

Plaintiff and other consumers of the Products made their purchase decisions

in reliance upon Defendants' advertised claims that the Products are "All Natural."

By falsely labeling the Products as being "All Natural," Defendant Hornell

has profited from consumers' preference for food products that are perceived to be

4

healthier and made free from any unnatural ingredients, preservatives, and/or added coloring.

The "All Natural" and/or "100% Natural" claims are false because the Products contain multiple unnatural ingredients and/or preservative – either ascorbic acid, high fructose corn syrup, malic acid, or erythritol, as well as unnatural added coloring – including but not limited to "beta carotene," "fruit and vegetable juices," "annatto," and "vegetable juice." In addition to the above-listed unnatural ingredients and preservatives in the Products (discussed infra), the added coloring in each of the Products renders the "All Natural" claims false.

The Food and Drug Administration ("FDA") does not regard foods with added coloring as natural, no matter the source of the coloring agent. According to their guidelines, they "have considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there (56 FR 60421 at 60466).

In response to citizen petitions and consumer requests, the FDA recently announced the establishment of a docket to receive information and comments on the use of the term "natural" in the labeling of human food products to determine whether a definition of "natural" should be established.

Among the 7,687 public comments received by the FDA, not one comment from the public stated that "natural" should be allowed in food labeling if color is added to a food; rather, hundreds of comments stated "natural" should only be used for foods which are free from added coloring. In addition, multiple comments discussed the other various unnatural ingredients in the Products. Some representative examples include:

a.  "When I see the word 'Natural' on packaging, I expect the contents to have only ingredients as they are found in nature. No chemicals, no coloring, no flavoring, no GMO's." (Comment from Kristine Milochik. Posted 02/23/2016).

b. "I think the term 'Natural' should be banned from food labeling. It is too ambiguous! It should be removed from all descriptors, including: Natural Flavor, Natural colors, All Natural and so on. I think for the interest of transparency all food ingredients should be simply labeled. The consumer has the right to know what they are eating or drinking." (Comment from Daniel Kinkelaar. Posted 08/26/2016).

c. "I firmly believe that consumers should be made aware of what they are purchasing when shopping for food and too many times companies are fooling the public by using the word 'Natural' when in fact it is not. When I see the word Natural on a food product, I consider this to mean that it is free from all additives, GMOs, Preservatives, Drugs, or colors. It is in its natural state. I

would like to see the FDA put more stringent requirements on companies who wish to use this term in their products." (Comment from Artemis Hader. Posted on 02/18/2016)

d. "The term 'Natural' should only appear on foods that are organic without any preservatives or man-made chemicals. The food should be GMO-free and contain no added colors, flavors, or synthetic substances. If a food product fails to meet any of these requirements, then it should not be allowed to have the label 'Natural' on it." (Comment from Sara Burr. Posted on 03/16/2016)

e. "Natural should indeed mean no preservatives, additives, GMO's and or flavor or color enhancers..." (Comment from Roy Collicutt. Posted on 03/15/2016).

f. "Natural should mean no added colors, flavoring, or preservatives, including citric acid. Natural should mean minimally processed and GMO free." (Comment from Catherine Willick. Posted on 02/16/2016).

g. "Natural should be used only when no artificial/synthetic flavors or colorings or preservatives have been used. Natural should never be used for any product containing geneticall[y] engineered ingredients, including ascorbic acid, folic acid, or anything other GE mineral/supplementation. (Comment from Kathryn Mahony. Posted on 05/05/2015).

h. "Ascorbic acid may or may not be natural, depending on the source and should be labeled that way." (Comment from James Scott. Posted on 12/16/2015).

i. "Natural should mean no genetically modified ingredients, no hormones or antibiotics, no high fructose corn syrup, and no preservatives or additives. (Comment from Steven Malafy. Posted on 12/27/2015).

j. "No highly processed/artificial sweeteners or sugar substitutes [such as] . . . erythritol." (Comment from Kristen Behrens. Posted on 10/18/2016).

k. "Food additives Maltodextrin and Natural flavors are used to enhance and preserve the products' flavors and appearance. These two additives should not be considered natural because it alters the food changing it from its original state." (Comment from Absydee Molina. Posted on 10/26/2016).

Clearly, reasonable consumers do not expect ingredients such as added colors, ascorbic acid, high fructose corn syrup, malic acid, erythritol or any of the various "natural flavors" to be present in products labeled "All Natural" or "100% Natural." Moreover, in that each of the Products contains at least one other unnatural ingredient and/or preservative in addition to the Product's "natural flavors," it can be fairly said that each Product contains multiple ingredients a reasonable consumer would not find to be "natural." To date, the FDA has not announced its decision to further define or regulate the term "natural" in food labeling. The "All Natural" or "100% Natural" label is prominently and conspicuously printed on the front of the Products. However, the added coloring agents coloring agents (regardless of their source), ascorbic acid, high fructose

corn syrup, malic acid, and erythritol, are not ingredients consumers would

normally expect to be included in products that are labeled as "All Natural."

Consequently, those ingredients render the "All Natural" and "100% Natural"

claims false, misleading and deceptive.

Paragraphs 40-42, and 48:

The FDA does not regard foods with added coloring as natural, no matter the

source of the coloring agent. According to their guidelines, they "have considered

'natural' to mean that nothing artificial or synthetic (including colors regardless of

source) is included in, or has been added to, the product that would not normally be

expected to be there (56 FR 60421 at 60466)." Thus, if a product contains any

color additives (as do all the Products) it cannot be truthfully labeled as "natural."

Furthermore, the process by which naturally-sourced food coloring is added to

products alters their status, rendering them no longer "natural," but artificial and/or

synthetic. The specific food coloring agents in the Products are "vegetable juice,"

"fruit and vegetable juices," "annatto," and "beta carotene."

Defendant misleadingly fails to state which particular "vegetable" and

"fruit" juices are used for coloring; however, just as with beta carotene, the

commercial extractions of these ingredients from vegetables and fruits makes these

ingredients artificial and/or synthetic. These processed ingredients are added to the

Products to change the composition of the product from its natural state, in

9

an amount, type, and/or form which a reasonable consumer would not expect. Indeed, as stated above, the FDA specifically and expressly does not recognize food that contains these ingredients as "natural," and neither do consumers. Reasonable consumers do not expect a product prominently labeled as "All Natural," and/or "100% Natural" to have added coloring, regardless of source, to alter the color of the Products.

<u>Paragraphs 62-67</u>

In addition to all the unnatural, synthetic ingredients discussed *supra*,[3] the so-called "natural flavors" in the Products further render the Products unnatural.[4] Notably, the FDA defines "natural flavor" as:

> [T]he essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from spice, fruit, or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

---

[3] Plaintiff's Amended Complaint, Paragraphs 49-61, alleges in detail the process and composition of ascorbic acid, high fructose corn syrup, malic acid, and erythritol as "un-natural" which reasonable consumers would not except to be present in Products as labelled "All Natural" and/or "100% Natural."

[4] [Footnote in Plaintiff's Amended Complaint: To the extent it is not otherwise apparent, Plaintiff clarifies that Plaintiff is not alleging, or even implying, that the "natural flavors" label is somehow inaccurate. Rather, Plaintiff is pointing out that the "natural flavors" in the Products contribute to the Products not being, "All Natural," or "100% Natural." Plaintiff is not attempting to re-define "natural flavors" or otherwise place the term at issue. Plaintiff is not claiming Defendant's use of the term "natural flavors" is deceptive or misleading. Plaintiff is claiming only that the "All Natural" and "100% Natural" claims are false, misleading, unfair, and/or deceptive in light of multiple factors, including, but not limited to the inclusion of the so-called "natural flavors."].

20 C.F.R. § 101.22

Ingredients that qualify as a "natural flavor" often have constituent components which are artificial or synthetic, and may not qualify as "natural" ingredients. *See Lam v. General Mills, Inc*., 859 F.Supp.2d 1097, 1102 (holding that a product with no natural ingredients can still qualify as "naturally flavored"). Many of the ingredients compatible with the FDA's definition of "natural flavors" are artificial or highly processed, despite being derived from natural ingredients. Consequently, something that is a "natural flavor" still might render a product "unnatural." Upon information and belief, that is the case here: the "natural flavors" present in the Products contain such artificial or synthetic ingredients as to render the Products' "All Natural" and/or "100% Natural" claims false.

Indeed, flavor agents are chemical compounds that have a particular chemical structure. They are designed to create unique flavor sensations when consumed. Adding these ingredients alters the natural state of the Products. In fact, often the "natural flavors" ingredients are synthesized and undergo chemical processes to be able to produce the desired "natural" taste. However, even if the natural flavors are not synthesized, their extraction necessitates the use of various ingredients such as ethanol, propylene, glycor, glycerine, and others – which are then added to the "natural flavors." In addition, "natural flavors" also frequently include other non-natural solvents and/or by-products which were used during the

extraction of these flavors and synthesis. While Defendant does not disclose its proprietary ingredient composition, extraction, or synthesis, other than indicating that "natural flavors" were added, this ingredient is not natural, even if it was not synthesized, due to its extraction, production/formulation, and the chemical residues it carries.

In light of the above, if fully informed, reasonable consumers would not expect the so- called "natural flavors" to be present in foods and beverages labeled "All Natural" and/or "100% Natural." Consumers buying such a product expect to taste natural products and flavors, instead of altered synthetic and/or artificial ingredients added to change the taste to be more pleasing. For this reason, in addition to all of the above, the "All Natural" and/or "100% Natural" claim on the Products is false, misleading, unfair, and deceptive.

Paragraphs 80-94

Defendant, as developer, manufacturer, and exclusive seller and distributor of the Products, has been aware since the Products' inception, that the False Claims are in fact false. Indeed, Defendant undoubtedly did its own investigation of the Products and its marketplace prior to it being offered for sale and, of necessity, such investigation would have made Defendant aware that the False Claims are in fact false. Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a product that was

indeed "All Natural" and/or "100% Natural." Plaintiff and the class members purchased the Products with being aware that the Products are not, in fact, "All Natural." Defendant possessed specialized knowledge regarding the data and information concerning the formula of the Products and its clams. In fact, in regard to the False Claims, the Product is a credence good because its purported "All Natural" label cannot be independently verified by the consumer at the time of purchase. In purchasing the Products, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate. Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Product or would not have paid as much for the Products. If, at some point in the future, the Product was improved to actually be "All Natural," Plaintiff would then purchase the Products again.

As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant. By marketing, selling and distributing the Product to purchasers in Missouri, Defendant made actionable statements that the Products were not "All Natural," but at all times failed to disclose that the Product was not in fact "All Natural." Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers

13

rely upon such concealment, suppression and omissions. Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made. As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendant possessed specialized knowledge regarding the data and information concerning the chemical formula of the Products which the Plaintiff and the class members could not and did not review. All of Plaintiffs' claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

Facts Particular to Plaintiff Nicholas Brunts, Paragraphs 95-101:

On April 3, 2022, at approximately 10:07 a.m. (central time), Plaintiff purchased one of the Products – the Arizona "Mucho Mango" Fruit Juice Cocktail, 128 fl. oz., from the Walmart located at 2201 Michigan Ave., Arnold, Missouri, 63010 (St. Louis County). Plaintiff was charged exactly $2.96 for the Product, along with an additional $.19 for taxes, and paid a total of $3.15 for the Product. In addition, prior to the above purchase, Plaintiff had regularly purchased and/or ingested the Products for years. Plaintiff recalls purchasing and ingesting a wide variety of the Products listed herein, including, from time to time, the diet versions of the Products. Due to the claims on the packaging, Plaintiff falsely believed he was purchasing a product that was "All Natural."

Plaintiff purchased the Product primarily for his personal, family and household use, and personally used the Product (by ingesting it). At the time he purchased the Product as described above, Plaintiff was unaware of the falsity of the Products' claims. He discovered that such claims were false shortly after purchasing and ingesting the Product in April. If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, he would not have bought the Product.

Plaintiff seeks compensatory damages, restitution, attorney's fees, rescission, and "such further relief as the Court deems just, including injunctive relief," and "all profits, benefits, and other compensation obtained by Defendant through [the] inequitable conduct," on behalf of a putative class of Missouri citizens who purchased the Products over a five-year period in Missouri.

## Legal Standards

<u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are

fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). This court "accepts as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017), quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint "must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.,* quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.,* quoting *Iqbal,* 556 U.S. at 678. For purposes of a Rule 12(b)(6) motion, although the Court must accept the allegations of the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678.

<u>Missouri Merchandising Practices Act</u>

To successfully present a claim under the MMPA, a plaintiff must allege that he (1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of defendant's use of one of the methods, acts or practices declared unlawful by the Act. *See* Mo. Rev. Stat. § 407.025.1. Those unlawful methods, acts or practices include "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. The MMPA is interpreted broadly to promote its purpose to protect consumers. *Huch v. Charter Commc'ns., Inc.,* 290 S.W.3d 721, 724 (Mo. 2009).To promote that purpose, the MMPA "does not define deceptive practices; it simply declares unfair or deceptive practices unlawful." *State ex rel. Danforth v. Independence Dodge, Inc*., 494 S.W.2d 362, 368 (Mo. App. Ct. 1973); *See also, Ward v. West County Motor Co.,* 403 S.W.3d 82, 84 (Mo. 2013) (citation omitted) ("The MMPA is drafted broadly and there is no specific definition of deceptive practices contained in the statute").

<u>Federal Rule of Civil Procedure 9(b)</u>

A claim sounding in fraud is subject to a heightened pleading standard wherein Plaintiff "must state with particularity the circumstances constituting fraud

or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct charged." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (*quoting Commercial Prop. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

<u>Injunctive Relief</u>

Article III of the United States Constitution "confines the jurisdiction of federal courts to justiciable cases and controversies." *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)). "The MMPA expressly provides for injunctive relief, as well as damages and attorney fees, § 407.025.2, 'not only to remedy violations ... but also to prospectively deter prohibited conduct and protect Missouri citizens.'" *Hawkins v. Nestle U.S.A. Inc.,* 309 F. Supp. 3d 696, 706-07 (E.D. Mo. 2018) (quoting *Berry v. Volkswagen Grp. of Am., Inc.,* 397 S.W.3d 425, 433 (Mo. 2013) (en banc)). To survive a motion to dismiss under Rule 12(b)(1), Plaintiff must prove constitutional standing by showing (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) a

likelihood that the injury will be redressed by a favorable decision. *Republican Party v. Klobuchar*, 381 F.3d 785, 791–92 (8th Cir. 2004) (quoting *Lujan.* 504 U.S. at 559–61). Establishing an injury-in-fact requires a showing of "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 791.

## Discussion

Preemption

Defendant first argues that Plaintiff's false labeling claims are preempted by federal law because such claims are predicated on a finding that natural flavors and colors in the products are artificial. Defendant contends those claims are not based on what constitutes artificial flavors or colors under the Federal Food, Drug, and Cosmetic Act but, instead, are premised upon assertions as to how the natural flavors and colors are allegedly processed or synthesized. In the instant Motion, Defendant admits it is "not asserting that Plaintiff's All Natural label claims are preempted but, rather, that claims that the natural flavors and colors are artificial are expressly preempted by the FDCA and by virtue of Plaintiff not claiming any violation of federal law."

Plaintiff maintains that Defendant's preemption arguments rely entirely upon claims he is not asserting. Plaintiff clarifies that he has not alleged that the

"Natural Flavors" label is inaccurate nor does he take the position that the natural flavors are artificial.

His Amended Complaint says, "Plaintiff is not attempting to re-define 'natural flavors' or otherwise place the term at issue. Plaintiff is not claiming Defendant's use of the term 'natural flavors' is deceptive or misleading…Many of the ingredients compatible with the FDA's definition of "natural flavors" are artificial or highly processed, despite being derived from natural ingredients." It goes on to assert, "The prominent label 'ALL NATURAL, 100% NATURAL,' or '100% ALL NATURAL' is depicted on the front of each Products' container, and serves to mislead consumers into believing the Products are entirely natural when they are in fact not."  Plaintiff's Amended Complaint reiterates, "To the extent it is not otherwise apparent, Plaintiff clarifies that Plaintiff is not alleging, or even implying, that the 'natural flavors' label is somehow inaccurate. Rather, Plaintiff is pointing out that the 'natural flavors' in the Products contribute to the Products not being, 'All Natural,' or '100% Natural.' Plaintiff is not attempting to re-define 'natural flavors' or otherwise place the term at issue. Plaintiff is not claiming Defendant's use of the term 'natural flavors' is deceptive or misleading. Plaintiff is claiming only that the 'All Natural' and '100% Natural' claims are false, misleading, unfair, and/or deceptive in light of multiple factors, including, but not limited to the inclusion of the so-called 'natural flavors.'"

When ruling on a motion to dismiss, the Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.,* 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in its favor. *Lustgraaf v. Behrens,* 619 F.3d 867, 872–73 (8th Cir. 2010). Therefore, when taking the allegations contained in the Amended Complaint as true, the Court finds for purposes of this motion that Plaintiff claims[5] are not preempted.

<u>MMPA</u>

Defendant next argues that Plaintiff fails to plead sufficient facts to support the conclusory allegation that a reasonable consumer is likely to be deceived, and he fails to meet the Rule 9(b) particularity requirement.

For his MMPA claim, Plaintiff alleges both a "deceptive practices" claim and an "unfair practices" claim.

*Reasonable Consumer*

Where a court "can conclude as a matter of law that members of the public are not likely to be deceived ... dismissal is appropriate." *Kelly v. Cape Cod Potato Chip Co.,* 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015) (citation omitted). Courts applying the MMPA often recognize, however, that whether a reasonable consumer would be deceived is often a question of fact that cannot be resolved on

---

[5] To the extent Plaintiff does allege, or may allege in future filings, that the label is inaccurate or seeks to define terms outside of the requirements under the FDA, those statements would be expressly preempted.

a motion to dismiss. See *Thornton v. Pinnacle Foods Grp. LLC,* 2016 WL 4073713, at *3 n.3 (E.D. Mo. Aug. 1, 2016). As such, dismissals of MMPA claims are only granted in the rare circumstance where—as a matter of law—a reasonable consumer would not be deceived by a representation about a product. *See id.* At the motion to dismiss stage, the Court's focus is on what is alleged in Plaintiff's Amended Complaint.

Plaintiff alleges facts that, if true, establish a deceptive or false claim as to the Products. The Court finds it plausible that a consumer might rely on the representation "All Natural" or "100% Natural" without looking at the ingredients, or that a consumer might not know that the ingredients at issue here are "artificial" ingredients. Plaintiff included several examples from consumers on the FDA's public comments that repeatedly point out they would not expect ingredients in the Products here to be "all natural." Further, "the mere presence of an ingredient statement on the back of a product does not eliminate the possibility that reasonable consumers may be misled," and that the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry. *Blue Buffalo Co. v. Nestle Purina Petcare Co.,* 2015 WL 3645262, at *5 (E.D. Mo. June 10, 2015) (internal citation and quotation mark omitted). The Court is unpersuaded, at this early stage of the proceeding, that as a matter of law a reasonable consumer would not be deceived

22

by Defendant's alleged false claims. As a result, the Court finds Plaintiff

sufficiently pleads a claim to support a reasonable customer is likely to be

deceived, and Defendant's Motion will be denied as to this point. *See, e.g., Murphy*

*v. Stonewall Kitchen, LLC,* 503 S.W.3d 308, 312-13 (Mo. App. E.D. 2016)

(declining to decide how a "reasonable consumer" would perceive the term "all

natural" at an early stage of litigation, and holding that the question is

appropriately addressed on a motion for summary judgment or trial).

*Rule 9(b)*

A plaintiff alleging fraud or mistake must "state with particularity the

circumstances constituting fraud or mistake" to survive a motion to dismiss. Fed.

R. Civ. P. 9(b). The Eastern and Western Districts of Missouri have consistently

held that Rule 9(b) applies to MMPA cases. *Goldman v. Tapestry, Inc.,* 501 F.

Supp. 3d 662, 666 (E.D. Mo. Nov. 17, 2020), citing *Blake v. Career Educ. Corp.,*

2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (collecting cases). "Highly

specific allegations" are not required under Rule 9(b), especially when the claim

relies on facts that are known only to the defendants. *Abels v. Farmers*

*Commodities Corp*., 259 F.3d 910, 921 (8th Cir. 2001). However, "conclusory

allegations that a defendant's conduct was fraudulent and deceptive are not

sufficient to satisfy the rule." *Schaller Telephone Co.,* 298 F.3d at 746 (citation

omitted). If a plaintiff alleges that a systematic practice of fraud exists, he "must

provide some representative examples of [defendant's] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc*., 441 F.3d 552, 557 (8th Cir. 2006).

Defendant argues that Plaintiff fails to plead fraud with the required particularity to satisfy Rule 9(b). The Court agrees. Plaintiff alleges that Defendant labels the Products with the false "All Natural" claims, while the Products contain various unnaturally-sourced, non-natural, synthetic, and/or artificial ingredients. However, Plaintiff does not adequately allege what ingredients are in each of the Products. He does not even allege the ingredients of the product he purchased, Mucho Mango. Plaintiff's position appears to be that the presence of the term "100% Natural" on the physical product labels is sufficient to support all the claims, no matter how vaguely articulated. Simply alleging that the Products include one or more of the ingredients at issue fails to sufficiently plead facts to satisfy the "what" for the specificity requirements of Rule 9(b). Plaintiff is required to allege the "time, place and *contents of false representations*, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels,* 259 F.3d at 920 (emphasis added). Plaintiff fails to "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McShane Constr. Co., LLC* 867 F.3d at 927, *quoting Iqbal*, 556 U.S. at 678; *see also Metro. Omaha Prop.*

*Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021). As such, the Court finds Plaintiff's fraud claims are not pled with sufficient particularity to satisfy the Rule 9(b) requirements and will grant Defendant's motion to dismiss with respect to the fraud claims.

### Products Other than "Mucho Mango"

Defendant takes issue that Plaintiff only claims purchasing one product, the Mucho Mango Fruit Juice Cocktail, and argues the statement of ingredients on the Mucho Mango does not include many of the ingredients at issue. Defendant asserts because Plaintiff's claims "are premised upon product composition, he has no standing to claim injury concerning any other product other than the Mucho Mango." Plaintiff fails to allege the product composition of Mucho Mango, or any of the other Products in his Amended Complaint, as stated above.[6] Therefore, because the Amended Complaint fails to state a claim about the other Products, the Court is unable to determine if Mucho Mango and the other Products are substantially similar. Therefore, the Court grants Defendant's motion to dismiss Plaintiff's claim as to the Products other than Mucho Mango.

### Standing for Injunctive Relief

---

[6] The Court recognizes Defendant attached the labels of each Products to the instant motion, but will not take those attachments into consideration at this time because Plaintiff fails to sufficiently pled his claim and is given leave to amend.

Next, Defendant maintains that Plaintiff lacks Article III standing to seek injunctive relief pursuant to Rule 12(b)(1) because he is now aware of Defendant's alleged deception and plausibly has not alleged a likelihood of future injury.

Plaintiff's Amended Complaint alleges if the Products were improved to actually be "All Natural," he would then purchase the Products again. Plaintiff argues that while the Product is not improved and/or re-labeled, Plaintiff is continuing to be damaged because he cannot purchase the Product without being damaged in the manner set forth in his Amended Complaint.

Courts in this district have consistently found a lack of standing to seek injunctive relief where the Complaint contained no allegations that Plaintiff intends to continue purchasing the product or purchase them in the future. *See, e.g., Huskey v. Colgate-Palmolive Co.,* 486 F. Supp. 3d 1339, 1347 (E.D. Mo. 2020). The question of whether a Plaintiff seeking injunctive relief will be able to demonstrate standing where he alleges he would buy the products in the future if they were as advertised/labeled, here "All Natural" or "100% Natural," is unsettled. *See, e.g., Barker v. Nestle Purina PetCare Co.,* 601 F. Supp. 3d 464, 470-71 (E.D. Mo. 2022) (finding no standing to seek injunctive relief when Plaintiff would only consider buying the dog food at issue if they actually contained no wheat as advertised); *Paschoal v. Campbell Soup Co*., 2022 WL 4280645, at *5 (N.D. Cal. Sept. 15, 2022) (finding a sufficient likelihood of future

harm when Plaintiffs' will likely purchase baby and toddler food products again in the future if the Products did not contain unlawful and misleading labels); *Barreto v. Westbrae Nat., Inc.,* 518 F. Supp. 3d 795, 809 (S.D.N.Y. 2021) (finding allegation that Plaintiff "would purchase" the product in the future if she "could trust the label" was insufficient to confer standing); *In re Coca-Cola Prods. Mktg. and Sales Prac. Litig.,* 2021 WL 3878654 at *2 (9th Cir. Aug. 31, 2021) ("The imminent injury requirement is not met by alleging that the plaintiffs would only consider purchasing Coke as advertised."); *Roper v. Big Heart Pet Brands, Inc.,* 510 F. Supp. 3d 903, 916 (E.D. Cal. 2020) (finding that "[a]n actionable cognizable injury exists where a plaintiff alleges that they cannot rely on defendant's labeling when deciding whether to purchase products in the future."); *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 971 (9th Cir. 2018) (concluding that, though a "close question," an allegation that plaintiff desired to purchase items adequately alleged imminent or actual threat of future harm);  *In re Gen. Mills Glyphosate Litig.,* 2017 WL 2983877, at *4 (D. Minn. July 12, 2017) (finding standing to seek injunctive relief where Plaintiffs alleged that they would buy the products if made as advertised, but "*unlike other false labelling cases, where, for example, the ingredient list belied the labelling claim,*" Plaintiffs had no way of knowing if Defendant made "100% Natural" claim true without buying product again) (emphasis added); *Buonasera v. Honest Co. Inc.,* 208 F. Supp. 3d

555, 564 (S.D.N.Y. 2016) (Plaintiff did not "demonstrate[ ] a likelihood of future injury" by alleging that "if [Defendant's] products were reformulated such that its representations were truthful, Plaintiff would consider purchasing [them.]").

The Ninth Circuit is the only Court of Appeals to have directly addressed whether Plaintiffs have standing to seek injunctive relief in these circumstances. In the labeling context, the Ninth Circuit has held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson,* 889 F.3d  at 969 (citation omitted).. In *Davidson*, Plaintiff contended that Defendant Kimberly–Clark falsely labeled its wipes as "flushable" and alleged that she "would purchase truly flushable wipes," a "desire ... based on her belief that 'it would be easier and more sanitary to flush the wipes than to dispose of them in the garbage.'" *Id.* at 970–71. "Her inability to rely on the validity of the information advertised on Kimberly–Clark's wipes," the alleged harm, was particular to Davidson, who would be affected "in a personal and individual way" because of her desire to purchase the product as advertised. *Id.* at 971. At the motion to dismiss stage, her plausible allegations that she "would purchase truly

flushable wipes manufactured by Kimberly–Clark if it were possible" made the informational injury she suffered concrete. *Id.*

The Court disagrees with the rational of the Ninth Circuit and concludes Plaintiff in this matter lacks standing to seek injunctive relief. In reaching this conclusion, the Court begins with binding Supreme Court and Eighth Circuit precedent, not with out-of-circuit caselaw. The Supreme Court, and Eighth Circuit, have explained that for a plaintiff to have standing to seek injunctive relief, "the threat of injury must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009); *See also, e.g., Bassett v. Credit Bureau Servs., Inc.,* 60 F.4th 1132, 1135 (8th Cir. 2023) (same); *Pharmaceutical Research v. Williams*, 64 F.4th 932, 940 (8th Cir. 2023) (same). And the Supreme Court has held that where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983). Standing to seek injunctive relief "requires a showing that the plaintiff faces a threat of ongoing or future harm." *Park v. Forest Serv. of U.S.,* 205 F.3d 1034, 1037 (8th Cir. 2000); *See also, Meagley v. City of Little Rock, 639 F.3d 384, 391* (8th Cir. 2011) (unless a plaintiff can show that he is "likely to suffer some future injury," he does not have standing to pursue an injunction against Defendant's action). "The Supreme Court has repeatedly reiterated "threatened

injury must be certainly impending to constitute injury in fact… allegations of possible future injury" are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Standing for injunctive relief is proper only if the alleged injury is "actual and imminent," "real and immediate," "certainly impending," and "likely."

Plaintiff does not have standing to seek injunctive relief. Plaintiff alleges a hypothetical situation in his Amended Complaint, that *if* Defendant improves the Products in the future, he will then buy them. Plaintiff's alleged injury that while the Products are not improved and/or re-labeled, he is continuing to be damaged because he cannot purchase the Product without being damaged is a speculative and ambiguous position that is too attenuated to show a concrete and particularized injury for the purposes of standing. A "concrete" injury is a "de facto" injury that actually exists. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 332 (2016). Accordingly, the Court will grant Defendant's motion and dismiss Plaintiff's claims for injunctive relief due to the lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

<u>Breach of Express Warranty</u>

Lastly, Defendant maintains Plaintiff's Breach of Express Warranty claim fails due to lack of plausible allegations regarding the label as a material factor for purchase and deficient pre-suit notice.

Under Missouri law, the elements of a breach of an express warranty claim are: (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of

fact regarding the kind or quality of those goods; (3) the statement was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to the statement of fact; (5) the nonconformity harmed the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion. *Gillan v. Wright Med. Tech. Inc.,* 396 F. Supp. 3d 844, 849-850 (E.D. Mo. 2019) (quoting *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 122 (Mo. banc 2010); *See also, Stefl v. Medtronic, Inc.,* 916 S.W.2d 879, 882–83 (Mo. App. Ct. E.D. 1996); Mo. Rev. Stat. § 400.2 – 313.1(a). The buyer of the product must give some type of a pre-suit notice to the seller in order to state an express breach of warranty claim. *Budach v. NIBCO, Inc.,* 2015 WL 6870145, at *4 (W.D. Mo. Nov. 6, 2015).

Defendant makes arguments, attaching exibits in support, that are not properly a matter of consideration at the motion to dismiss stage. The Court turns to the Plaintiff's Amended Complaint, which alleges: (1) "Defendant sold the Product in its regular course of business. Plaintiff and the class members purchased the Product;" (2) Defendant's statement regarding the kind or quality of the Products was made on the "front of each Products' container" label, depicting the false claim that is "ALL NATURAL, 100% NATURAL," or "100% ALL NATURAL;" (3) "If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, he would not have bought the Product;" (4) the goods did not conform to the statement of fact; (5) Plaintiff

believed that he was receiving a product that was, in fact, "All Natural." The

Product did not do what Plaintiff bargained for, however; because it was not all

natural" which harmed him; and (6) "…on April 4, 2022, counsel for Plaintiff

provided written [notice] of Defendant's breach of express warranty to Defendant."

Taking the allegations contained in the Amended Complaint as true, Plaintiff has

adequately pled his breach of express warranty claim.  Plaintiff is not required to

prove the merits of his cause of action at the pleading stage, rather Plaintiff is

required only to set out a plausible claim.  *Twombly*, 550 U.S. at 556. As such,

Defendant's motion to dismiss Plaintiff's breach of express warranty claim will be

denied.

## Conclusion

Based upon the foregoing analysis, Defendant's Motion to Dismiss will be

granted in part and denied in part.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Hornell Brewing Co., Inc.'s

Motion to Dismiss the First Amended Complaint [Doc. No. 25] is **GRANTED IN**

**PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss

Plaintiff's claims as expressly preempted is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's claim that a reasonable customer is likely to be deceived is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's fraud claims for failure to satisfy the Rule 9(b) particularity requirements is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's claim as to the Products other than "Mucho Mango" is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's claims for injunctive relief for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's breach of express warranty claim is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff is given fourteen (14) days from the date of this Opinion, Memorandum, and Order to file a Second Amended Complaint addressing the issues herein.

Dated this 19th day of May, 2023.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE